IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANNE DUFFY | CIVIL ACTION |
| --- | --- |
| v. | NO. 22-4402 |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | |

<u>**MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT**</u>

**Baylson, J.**                                                                                                                          **December 21, 2023**

In this insurance dispute, Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") moves for summary judgment against Plaintiff Anne Duffy. Duffy brings a single breach of contract claim against Liberty Mutual for its denial of coverage after a "devastating fire" at a property owned by Duffy. Liberty Mutual now argues that Duffy's suit is time barred by her policy. Liberty Mutual further contends that Duffy did not "reside" at the damaged property, thus excluding coverage. For the reasons explained below, the Court will **DENY** Liberty Mutual's motion.

I.   BACKGROUND

A.  The Policy

Duffy owned a "LibertyGuard Deluxe Homeowners Policy" from Liberty Mutual. ECF No. 31 (Liberty Mutual St. Undisp. Facts), Ex. B ("Policy"), at 1, 5; ECF No. 35 (Duffy St. Disp. Facts) at ¶ 7. The policy listed 2823 Ryerson Pl, Philadelphia PA, 19114-3401 as the "insured location," and was in full force and effect from October 2020 through October 2021. Policy at 1. Two provisions from that policy are relevant to the current motion.

1

First, the policy makes clear that "[n]o action can be brought" against Liberty Mutual "unless the policy provisions have been complied with and the action is started within one year after the date of loss." Id. at 15.

Second, several subsections define what constitutes a "insured location." At its broadest, the policy defines "insured location" as:

> a. The "residence premises";
> b. The part of other premises, other structures and grounds used by you as a residence and:
>     (1) Which is shown in the Declarations; or
>     (2) Which is acquired by you during the policy period for your use as a residence;
> c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;
> d. Any part of a premises:
>     (1) Not owned by an "insured"; and
>     (2) Where an "insured" is temporarily residing;
> e. Vacant land, other than farm land, owned by or rented to an "insured";
> f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";
> g. Individual or family cemetery plots or burial vaults of an "insured"; or
> h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

Id. at 6. The policy further defines "residence premises" as:

> a. The one family dwelling, other structures, and grounds; or
> b. That part of any other building;
>
> where you reside and which is shown as the "residence premises" in the Declarations. "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

Id. And finally, as to coverage, the policy states that it extends only to "the dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling." Id.

### B. Duffy's Ownership of and Prescence at the Property

Duffy owned the property at the insured location. ECF No. 34 at 14–15. She also paid property taxes, utility bills and insurance premiums, and owned the furniture at the property. Id. Critically though, Duffy had not lived at the property full time for several years prior to the fire at issue in this case. ECF No. 31 at ¶ 22; ECF No. 35 at ¶ 22. Following an open-heart surgery in 2016, Duffy had instead primarily lived with her daughter at a nearby address. Id.

In an interview with Liberty Mutual shortly after the May 2021 fire, Duffy stated that she had not been back to the property since her surgery, largely for health-related reasons. ECF No. 31 at ¶ 17; see id., Ex. E, at 6.[1] Duffy further stated, however, that she had kept receiving mail at the property until recently and had kept paying its utilities because she believed her two sons were still living at the property. ECF No. 31 at ¶ 18; ECF No. 35 at ¶ 18. That said, Duffy also admitted that she had little-to-no contact with either son in quite some time, id., and was unaware that the property had fallen into a state of "disrepair" since her last visit. ECF No. 31 at ¶¶ 20–21; ECF No. 35 at ¶¶ 20–21. While Liberty Mutual contends Duffy further stated that she was "not sure if her sons were still living at the Property" at the time of the fire, ECF No. 31 at ¶ 18, Duffy instead argues that she "denie[d] that [her] sons were not living at the Property," having conveyed to Liberty Mutual that her sons "always lived there" and "that was always their home base." ECF No. 35 at ¶ 18 (citations omitted). Id.

At her subsequent deposition in this case, Duffy then testified that she had stayed at the property "off and on" since the surgery, and that she went back to the property "sometimes to stay

---

[1] The Court notes that Duffy "denie[s] as stated" this characterization of her discussion with Liberty Mutual, based on Duffy's later deposition testimony. ECF No. 35 at ¶ 17. She does so despite the existence of a transcript that supports Liberty Mutual's framing of this initial conversation. Thus, this Court construes Duffy's denial to be regarding the factual nature of her presence at the location, not to the statements within the transcript of her initial conversation with Liberty Mutual.

a week, maybe a weekend" and "stopped in a lot." ECF No. 31 at ¶ 22; id., Ex. G, at 2; ECF No. 35 at ¶ 22. Duffy also stated that she would visit her sons at least once per month, and sometimes stayed at the property overnight for a week or a weekend. Id. Moreover, Duffy kept her clothes at the property, along with other personal items including her piano, furniture, bed, dishes, collectible Lenox items and jewelry. ECF No. 31 at ¶ 17; ECF No. 35 at ¶ 17. Duffy also testified that she intended to move back to the property when she recovered. Id.

### C. The Fire

As listed in a City of Philadelphia Police report, a fire occurred at the property on May 21, 2021. ECF No. 31 at ¶ 8; id., Ex. D; ECF No. 35 at ¶ 8. The subject fire loss and claim was reported to Liberty Mutual on June 4, 2021, although around that time Duffy conveyed to Liberty Mutual that she was unsure of the specific date the fire occurred. Id.[2] Duffy's initial interview with Liberty Mutual, as mentioned above, occurred on July 2, 2021. ECF No. 31 at ¶ 15; ECF No. 35 at ¶ 15. Liberty Mutual eventually denied coverage on August 27, 2021, concluding that its "investigation revealed that at the time of the of loss and for several years prior to the fire that [Duffy was] not residing at the policy address." ECF No. 34, Ex. A at 1; ECF No. 36 at 1.

Notably, the "Date of Loss" on Liberty Mutual's denial letter listed "06/30/21," rather than May 21, 2021, the date Liberty Mutual alleges the fire occurred. Id. As Liberty Mutual notes, however, numerous earlier correspondences in connection with Duffy's claim—including several documents created or signed by Duffy herself—instead list May 21st as the date of loss. ECF No. 36 at 2.

---

[2] In other words, Duffy admits only "that the fire loss was reported to Defendant on June 4, 2021," and does not appear to admit that the record unequivocally reflects an occurrence date of May 21, 2021.

### D.  Procedural History

On June 28, 2022, Duffy filed a Complaint against Liberty Mutual in the Philadelphia Court of Common Pleas, alleging one count of breach of contract for Liberty Mutual's denial of coverage.  See ECF No. 1, Ex. A.  Liberty Mutual removed to this Court on November 3, 2022, after which it filed an Answer on November 10, 2022.  ECF Nos. 1, 7.  The case proceeded through discovery, and this Court eventually ordered the parties to arbitrate.  ECF No. 20.  Immediately before arbitration occurred, Liberty Mutual filed the instant motion.  ECF No. 30.  On November 1, 2023, following a one-day hearing, the arbitrators entered an award in favor of Duffy.  ECF No. 33.  Duffy nonetheless then responded to Liberty Mutual's pending motion for summary judgment on November 13, 2023, to which Liberty Mutual replied on November 20, 2023.  ECF Nos. 34, 36.  On November 30, 2023, Liberty Mutual then demanded a jury trial de novo, pursuant to Local Civil Rule 53.2(7)(a), ECF No. 38, requiring this to Court to resolve its pending motion.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court

that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### III. DISCUSSION

Liberty Mutual asserts two arguments in support of its motion. First, Liberty Mutual contends that Duffy's claim is time barred under the express terms of her policy. ECF No. 30 at 4. Second, Liberty Mutual contends that Duffy was not a "resident" of the property that caught fire, independently precluding her claim. Id. at 5. But genuine disputes of fact exist for both arguments, and so neither warrants this Court granting summary judgment at this time. Liberty Mutual is of course free to preserve and re-raise these positions in future Rule 50 motions, at which time the Court may revisit each issue.

### A. One Year Suit Limitation

Neither party disputes that Pennsylvania courts have consistently held contractual one-year suit limitations to be valid and enforceable. See id. at 4 (citing to General State Authority v. Planet Insurance Co., 464 Pa. 162, 165 (1975); ECF No. 34 at 10–11 (same). Nonetheless, Duffy further contends that such terms only control "[i]n the absence of an affirmative misrepresentation by the insurer or its agent about the contents of the policy." ECF No. 34 at 11 (citing to Travelers Pers. Ins. Co. v. Est. of Parzych, 675 F. Supp. 2d 505, 511 (E.D. Pa. 2009)). When that

misrepresentation results in "inducement and justifiable reliance on that inducement," the principles of equitable estoppel may preclude enforcement of a policy's suit limitations. Travelers Pers. Ins. Co., 675 F. Supp. 2d at 511 (citations omitted); Dillinger v. W.C.A.B. (Port Auth. of Allegheny Cnty.), 40 A.3d 748, 755 (Pa. Commw. Ct. 2012) ("the doctrine of equitable estoppel can[] toll the statute of limitations" if "the Claimant can establish fraud, concealment or misrepresentation on the part of the employer.") (citations and quotations omitted).

Here, the Court is persuaded that a genuine dispute of fact exists as to whether Liberty Mutual's erroneous August 2021 letter led Duffy to "reasonably believe" that her relevant "date of loss" was June 30, 2021, at least for the purposes of suing on the policy. While earlier documents may have indicated otherwise, those earlier documents cannot change that this final and dispositive communication from Liberty Mutual conveyed precisely the opposite message. Accordingly, a jury must decide what effect, if any, this denial letter had on the timeliness of Duffy's current claim.

### B. Residency Requirement

Liberty Mutual's "residency" argument fares no better. True, as Liberty Mutual contends, certain Pennsylvania case law stands for the proposition that a former home is not a "residence" for insurance policy purposes, even if an individual visits that property intermittently. ECF No. 30 at 14 (citing to Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co., 545 A.2d 343, 345–46 (Pa. Super. Ct. 1988); Travelers Pers. Ins. Co., 675 F. Supp. 2d at 505). But those same cases make clear the inquiry is ultimately one of "physical fact," grounded in whether a claimant has spent "significant amounts of time at" a property. Amica, 545 A.2d at 345–46.

And the current dispute has several distinguishing facts rendering prior Pennsylvania case law inapposite. Namely, Duffy owns both the home and the policy insuring the home in this case,

7

whereas Liberty Mutual's precedents largely involve questions of coverage for the children of a policyholder, often in situations where (a) the child has moved away from the home or (b) splits time at multiple as residence as result of divorce.  Cf State Farm Mut. Auto. Ins. Co. v. Quinn, 62 F. App'x 425, 429–30 (3d Cir. 2003) (relying on "the absence of an established habit of regularly scheduled and consistent physical contact" to enter a directed verdict against a child who did not "live at" his father's home); St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1433 (3d Cir. 1991) (similar).  Likewise, Duffy's deposition testimony regarding the consistency of her contact with the property surpasses that asserted by many of the claimants in the precedent to which Liberty Mutual cites.  Id.

Accordingly, this Court cannot say that no genuine dispute of material fact exists as to whether Duffy "resided" at this property when it caught fire.[3]  That is particularly true here because—as Duffy rightly notes—the policy itself fails to clearly define what it means to "reside" at property, even if does define "residence premises."  While this Court does not preclude the possibility that Duffy may fail to carry this burden at trial, the Court concludes—at present—it would be inappropriate to grant summary judgment in favor of Liberty Mutual on this highly factual question.

## IV. CONCLUSION

For the foregoing reasons, Liberty Mutual's Motion for Summary Judgement is **DENIED**. An appropriate order follows.

O:\CIVIL 22\22-4402 Duffy v. Liberty Mutual Fire Insurance Co\22-4402 - Duffy MSJ_12.20.23.docx

---

[3] Moreover, the policy defines "insured" to mean Duffy "and residents of [her] household who are . . . [her] relatives."  Policy at 6.  As such, Duffy's further testimony that her sons were residing at the house at the time of the fire, which may have independently triggered policy coverage, creates another genuine issue of fact that precludes summary judgment.  ECF No. 31 at ¶ 18.